Dear Mr. Ottinot:
You have requested my opinion on substantially the following question:
Is the City of Sunny Isles Beach authorized to enact an ordinance requiring a condominium association located within the city limits to furnish security guard services upon their premises to curtail the incidence of crime?
In sum:
 The City of Sunny Isles Beach appears to have the authority pursuant to section 2(b), Article VIII, Florida Constitution, and section 166.021, Florida Statutes, to adopt an ordinance requiring condominium associations within the jurisdiction of the city to furnish security guard services upon their premises to curtail the incidence of crime.
According to your letter, the city is facing an increase in the number of crimes occurring in certain areas of the city including several high rise apartment complexes and condominiums. The city's police department responds to reported crimes and uses its best efforts to eliminate and curtail crime throughout the city. However, you state that the city's police department cannot maintain a constant presence within a condominium or apartment complex. The city is considering adopting an ordinance that would require condominium associations and apartment complex owners to furnish security guard services upon their premises to curtail the incidence of crime. You are particularly concerned that Chapter 718, Florida Statutes, the "Condominium Act" may preempt or conflict with any proposed local legislation.
Initially, I must advise you that my response is limited to a consideration of municipal home rule powers issues as they relate to your question. Any consideration of whether the particular ordinance enacted may be violative of constitutional guarantees, such as equal protection, or touch on such constitutional issues as impairment of contract would require an examination of the actual terms of any such ordinance and the legislative history related to its enactment. This information has not been provided to us and we cannot speculate on the enactment or content of the proposed ordinance. In addition, the City of Sunny Isles Beach is located within Miami-Dade County, a constitutional charter county.[1]
This office has not been advised of any provision of the Dade County Charter that could affect the proposed ordinance and therefore no comment is expressed regarding any possible preemption or conflict issues in that regard.
Section 2(b), Article VIII of the Florida Constitution provides, in part that:
 "Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law."
The Florida Supreme Court has stated that this constitutional provision "expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services."[2] The Court stated, in State v. City of Sunrise, that the only limitation on the power of municipalities under this constitutional section is that such power must be exercised for a valid municipal purpose. As determined by the Court, "[l]egislative statutes are relevant only to determine limitations of authority" and municipalities need no further authorization from the Legislature to conduct municipal government.[3]
Pursuant to section 166.021(1), Florida Statutes, municipalities are granted "the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law." Subsection (3) of the statute prescribes limitations on the subjects that municipal legislation may address:
 "The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
 (a) The subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution;
 (b) Any subject expressly prohibited by the constitution;
 (c) Any subject expressly preempted to state or county government by the constitution or by general law; and
 (d) Any subject preempted to a county pursuant to a county charter adopted under the authority of ss. 1(g), 3, and 6(e), Art. VIII of the State Constitution."
The relationship between local and state legislation was specifically discussed by the Florida Supreme Court in City of Miami Beach v. RocioCorporation:
 "The principle that a municipal ordinance is inferior to state law remains undisturbed. Although legislation may be concurrent, enacted by both state and local governments in areas not preempted by the state, concurrent legislation enacted by municipalities may not conflict with state law. If conflict arises, state law prevails. An ordinance which supplements a statute's restriction of rights may coexist with that statute, whereas an ordinance which countermands rights provided by statute must fail."[4]
The City of Sunny Isles Beach, therefore, may legislate on any matter upon which the Legislature may act, so long as its ordinance does not forbid what the Legislature has expressly licensed or authorized, or permit what the Legislature has expressly forbidden.[5]
The issue of conflict between local ordinances and state law was addressed in Jordan Chapel Freewill Baptist Church v. Dade County.[6]
The court in Jordan Chapel stated that:
 "Legislative provisions are inconsistent if, in order to comply with one provision, a violation of the other is required. . . .[T]he sole test of conflict for purposes of preemption is the impossibility of co-existence of the two laws. Courts are therefore concerned with whether compliance with a County ordinance requires a violation of a state statute or renders compliance with a state statute impossible."[7]
(emphasis supplied in original)
Chapter 718 of the Florida Statutes, is the "Condominium Act."[8]
The purpose of the act, as provided by the Legislature and recognized by the courts, is to recognize the condominium form of property ownership and establish a detailed scheme for the creation, sale, and operation of condominiums.[9] As specifically set forth in section 718.102, Florida Statutes, the purpose of the act is:
 "(1) To give statutory recognition to the condominium form of ownership of real property.
 (2) To establish procedures for the creation, sale, and operation of condominiums.
 Every condominium created and existing in this state shall be subject to the provisions of this chapter."
The operation of a condominium is accomplished by the condominium association, a Florida corporation which can be either a for profit or not for profit.[10] The owners of the units are shareholders or members of the association and the officers and directors of the association are charged with a fiduciary relationship to the unit owners.[11] The powers and duties of the condominium association include those described in section 718.111, Florida Statutes, and "except as expressly limited or restricted in this chapter, those set forth in the declaration and bylaws and chapters 607 and 617, as applicable."[12] The association's powers include, but are not limited to, the maintenance, management, and operation of the condominium property.[13]
The only provision of the Condominium Act which specifically mentions security services is section 718.115, Florida Statutes, relating to common expenses. Pursuant to section 718.115(1)(a), Florida Statutes:
 "Common expenses include the expenses of the operation, maintenance, repair, replacement, or protection of the common elements and association property, costs of carrying out the powers and duties of the association, and any other expense, whether or not included in the foregoing, designated as common expense by this chapter, the declaration, the documents creating the association, or the bylaws. Common expenses also include reasonable transportation services, insurance for directors and officers, road maintenance and operation expenses, in-house communications, and security services, which are reasonably related to the general benefit of the unit owners even if such expenses do not attach to the common elements or property of the condominium. However, such common expenses must either have been services or items provided on or after the date control of the association is transferred from the developer to the unit owners or must be services or items provided for in the condominium documents or bylaws. Unless the manner of payment or allocation of expenses is otherwise addressed in the declaration of condominium, the expenses of any items or services required by any federal, state, or local governmental entity to be installed, maintained, or supplied to the condominium property by the association, including, but not limited to, firesafety equipment or water and sewer service where a master meter serves the condominium, shall be common expenses whether or not such items or services are specifically identified as common expenses in the declaration of condominium, articles of incorporation, or bylaws of the association." (e.s.)
Thus, security services generally are considered common expenses which are reasonably related to the general benefit of the unit owners and must be provided on or after the date control of the association is transferred from the developer to the unit owners or must be provided for in the condominium documents or bylaws. However, as the statute makes clear, expenses for services required by a governmental entity shall be considered common expenses whether or not those services are specifically identified in the condominium documents.
With the exception of the statute discussed above, no provision of Chapter 718, Florida Statutes, speaks to a requirement for providing security services on condominium property. Thus, I cannot say that the subject is preempted to the state or would conflict with any current statutory provision in the Condominium Act. In light of the home rule powers of the municipality, it would appear that the City of Sunny Isles Beach has the authority to enact such an ordinance.
I would also note that the courts of this state have recognized the broad scope of municipal police powers and it appears that the legislation you propose has been advocated in the interest of the public health, safety, and welfare. It is generally the case in Florida and elsewhere that "assuming a regulation is necessary for the welfare of the public, and is not physically invasive or confiscatory of some existing property right, it is probably within the government's `police power' to enact it."[14]
However, while Florida municipalities enjoy broad powers to adopt police power legislation, those powers must be exercised within the limits of the Florida Constitution. Thus, a police power ordinance is subject to the constitutional limitations provided by Article I, section 2, Florida Constitution, that any such legislation not be unreasonable, arbitrary, or capricious, and that the means employed by the legislative body have a real and substantial relation to the object sought to be attained.[15]
Thus, without comment on the policy of enacting such an ordinance, in considering the proposed ordinance, the City of Sunny Isles Beach should be mindful of whether such an ordinance imposing a security requirement on a particular form of multi-family residential ownership, that is, a condominium association, would pass constitutional muster as applying equally and uniformly to all persons similarly conditioned.[16]
While this office has identified no Florida case law considering the issues surrounding adoption of a local security requirement for condominium property, several cases from New Jersey discuss a number of issues presented by such legislation. In 1993, the Supreme Court of New Jersey reviewed an ordinance passed by the City of Newark requiring certain private property owners to provide armed security guards on their premises for certain periods during the day.[17] The Newark ordinance was challenged by apartment owners who argued, among other things, that the ordinance was an improper attempt by the city to delegate its governmental duty to provide police protection. The New Jersey courts recognized that local governments bear the burden of providing police protection and that this duty may not be transferred to private citizens. However, as the Court had noted in a line of cases, [18] local governments may call on private citizens to provide assistance in the performance of that duty. Thus, the New Jersey Supreme Court held that "[t]he requirement of an armed security guard for plaintiffs' buildings in no way constitutes an abdication of the City's own duties; rather, it manifests a rational legislative determination that a certain class of buildings poses special risks of crime and that the municipal police alone cannot possibly deal with all the crime in the City in a timely manner."[19]
Accordingly, it is my opinion that the City of Sunny Isles Beach appears to have the authority pursuant to section 2(b), Article VIII, Florida Constitution, and section 166.021, Florida Statutes, to adopt an ordinance requiring condominium associations within the jurisdiction of the city to furnish security guard services upon their premises to curtail the incidence of crime.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See Art. VIII, s. 6(e) and (f) and s. 11, Fla. Const.
[2] State v. City of Sunrise, 354 So. 2d 1206, 1209 (Fla. 1978).
[3] Supra at 1209. See also City of Miami Beach v. Forte Towers, Inc.,305 So. 2d 764 (Fla. 1974).
[4] City of Miami Beach v. Rocio Corporation, 404 So. 2d 1066, 1070
(Fla. 3d DCA 1981), petition for review denied, 408 So. 2d 1092 (Fla. 1981).
[5] See generally 12 Fla. Jur. 2d Counties and Municipal Corporations, s. 187.
[6] 334 So. 2d 661 (Fla. 3d DCA 1976). And see City of Kissimmee v.Florida Retail Federation, Inc., 915 So. 2d 205 (Fla. 5th DCA 2005) (generally the fact that local legislation imposes additional requirements on a person or business is not evidence of conflict);F.Y.I. Adventures v. City of Ocala, 698 So. 2d 583 (Fla. 5th DCA 1997) (if no issue of preemption, conflict with state statute is given a very strict and limited meaning; they must contradict each other in the sense that both legislative provisions cannot co-exist, i.e., in order to comply with one, a violation of the other is required).
[7] Id. at 664.
[8] See s. 718.101, Fla. Stat.
[9] See, e.g., Neuman v. Grandview At Emerald Hills, Inc., 861 So. 2d 494
(Fla. 4th DCA 2003); Raines v. Palm Beach Leisureville CommunityAssociation, Inc., 413 So. 2d 30 (Fla. 1982) (purposes of Ch. 718, Fla. Stat., are to give statutory recognition to condominium form of ownership and to establish procedures for creation, sale, and operation of condominiums).
[10] Section 718.111(1)(a), Fla. Stat.
[11] Id.
[12] Section 718.111(2), Fla. Stat.
[13] Section 718.111(3), Fla. Stat.
[14] See, e.g., Lee County v. Sunbelt Equities, II, Ltd. Partnership,619 So. 2d 996 at 1006 (Fla. 2d DCA 1993); Dragomirecky v. Town of PonceInlet, 882 So. 2d 495 (Fla. 5th DCA 2004) (regulations duly enacted pursuant to lawful authority that relate to the public health, safety, morals, or general welfare are presumptively valid).
[15] See State v. Leicht, 402 So. 2d 1153 (Fla. 1981), cert. denied,102 S.Ct. 1611, 455 U.S. 989, 71 L.Ed 2d 848 (1982); Rainey v. Nelson,257 So. 2d 538 (Fla. 1972); Iacovone v. State, 639 So. 2d 1108 (Fla. 2d DCA 1994), affirmed, 660 So. 2d 1371 (Fla. 1995); City of Panama City v.Head, 797 So. 2d 1265 (Fla. 1st DCA 2001).
[16] See Haber v. State, 396 So. 2d 707 (Fla. 1981); City of PanamaCity v. Head, supra; 515 Associates v. City of Newark, 623 A.2d 1366
(N.J. 1993).
[17] 515 Associates v. City of Newark, 623 A.2d 1366 (N.J. 1993).
[18] See e.g., Sunrise Village Associates v. Borough of Roselle Park,438 A.2d 945 (Law Div. 1980), affirmed, 438 A.2d 944 (App. Div. 1981),cert. denied, 446 A.2d 144 (N.J. 1982); and Hudson Circle Servicenter,Inc. v. Kearny, 359 A.2d 862 (N.J. 1976).
[19] 515 Associates v. City of Newark, 623 A.2d 1366, at 1372-1373
(N.J. 1993).