COPE, J.
 

 This is an appeal of a summary judgment which found subsection 718.404(2), Florida Statutes (2007), unconstitutional as applied to The Grand Condominium. We affirm.
 

 The Grand Condominium was created in 1986. It is a mixed-use condominium consisting of 810 residential units (owned individually), 141 retail units (owned by the appellee PH Retail, Inc.), and 259 commercial units (owned by PH Hotel, Inc.). The commercial units are a DoubleTree Hotel. The retail units are shops on the first two floors of the condominium. Appellant Susan Cohn is a residential unit owner.
 

 In 1986 when the condominium was created, there was no specific statute regulating mixed-use condominiums. The articles of incorporation for The Grand Condominium Association, Inc., (and the Association’s by-laws,) provide for a board of directors consisting of seven members. Two members are elected by the residential unit owners, two are elected by the commercial unit owners, and two are elected by the retail unit owners. A seventh director is elected by vote of all of the unit owners. The Grand was turned over by the developer to the Association in 1993.
 

 In 1995, the legislature enacted section 718.404, Florida Statutes (1995), entitled Mixed-Use Condominiums. Ch. 95-274, § 38, Laws of Fla. Subsection (2) of section 718.404 addressed voting and stated: “Subject to s. 718.301, where the number of residential units in the condominium equals or exceeds 50 percent of the total units operated by the association, owners of the residential units shall be entitled to vote for a majority of the seats on the board of administration.” § 718.404(2), Fla. Stat. (1995). The statute was silent on the issue of retroactivity.
 

 In 2007, the legislature amended subsection (2) by adding: “This subsection shall apply retroactively as a remedial measure.” Ch. 2007-173, § 5, Laws of Fla. After the 2007 amendment, Ms. Cohn requested that the voting arrangements be changed at The Grand to give a majority of the board membership to the residential unit owners in accordance with subsection 718.404(2).
 

 The Association filed a declaratory judgment action. The Association sought a declaration that, among other things, subsection 718.404(2) constituted an impairment of the obligation of contract under
 
 *10
 
 Article I, Section 10 of the Florida Constitution.
 
 [1]
 
 The Grand and Cohn filed motions for summary judgment.
 

 The trial court held the 2007 amendment to subsection 718.404(2) unconstitutional as applied to The Grand. The Grand had been organized in 1986, prior to the enactment of section 718.404 in 1995, and the voting arrangements were legal when the condominium was organized. The court held the 2007 retroactivity provision constituted an impairment of contract.
 
 [2]
 
 Ms. Cohn has appealed.
 

 The Florida Constitution provides, “No ... law impairing the obligation of contracts shall be passed.” Art. I, § 10, Fla. Const. The Florida Supreme Court’s leading case in the context of condominium regulation is
 
 Pomponio v. Claridge of Pompano Condo., Inc.,
 
 378 So.2d 774 (Fla.1979). Where a state statute is enacted under the state’s police power, “we must weigh the degree to which a party’s contract rights are statutorily impaired against both the source of authority under which the state purports to alter the contractual relationship and the evil which it seeks to remedy.”
 
 Id.
 
 at 780.
 

 Quoting
 
 Allied Structural Steel Co. v. Spannaus,
 
 438 U.S. 234, 244-45, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), the Court said:
 

 In applying these principles to the present case, the first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation.
 

 Several factors to be considered in this balancing test were identified in
 
 Spannaus:
 

 (a) Was the law enacted to deal with a broad, generalized economic or social problem?
 

 (b) Does the law operate in an area which was already subject to state regulation at the time the parties’ contractual obligations were originally undertaken, or does it invade an area never before subject to regulation by the state?
 

 (c) Does the law effect a temporary alteration of the contractual relationships of those within its coverage, or does it work a severe, permanent, and immediate change in those relationships irrevocably and retroactively?
 

 Pomponio,
 
 378 So.2d at 779 (footnotes omitted).
 

 It is our view that the voting arrangements in a condominium are of great importance, and the change imposed by subsection 718.404(2) operates as a substantial impairment of the existing contractual relationship. We therefore proceed to consider the three parts of the
 
 Pomponio
 
 test.
 

 The first question is, “Was the law enacted to deal with a broad, generalized economic or social problem?” The record now before us is devoid of any explanation of the problem which led to the enactment of the retroactivity provision. The 2007 legislative staff report has been made part of the record. The staff report lists the
 
 *11
 
 retroactivity provision as one of a number of amendments contained in chapter 2007-173, Laws of Florida, but there is no explanation of the problem which led to its adoption. The staff report did, however, note that the amendment might be vulnerable under the
 
 Pomponio
 
 decision as being an unconstitutional impairment of obligation of contract. Fla. S. Jud. Comm. CS for SB902 (2002) Staff Analysis, (April 18, 2007) at 17-18.
 

 The second question is, “Does the law operate in an area which was already subject to state regulation at the time the parties’ contractual obligations were originally undertaken, or does it invade an area never before subject to regulation by the state?”
 
 Pomponio,
 
 378 So.2d at 779. At the time The Grand was organized in 1986, condominiums were subject to significant regulation under chapter 718, Florida Statutes, but special regulations for mixed-use condominiums did not come into existence until 1995. The Grand conformed to chapter 718 when it was organized.
 

 The third question is, “Does the law effect a temporary alteration of the contractual relationships of those within its coverage, or does it work a severe, permanent, and immediate change in those relationships irrevocably and retroactively?”
 
 Pomponio,
 
 378 So.2d at 779. In this case the change would be severe, permanent, and immediate.
 

 We conclude that the
 
 Pomponio
 
 test is not satisfied. The 2007 retroactivity amendment must be invalidated as an impairment of the obligation of contract.
 

 For the stated reasons, we affirm the trial court’s judgment.
 
 See also Wellington Prop. Mgmt. v. Parc Corniche Condo. Ass’n, Inc.,
 
 755 So.2d 824 (Fla. 5th DCA 2000);
 
 Tradewinds of Pompano Ass’n v. Rosenthal,
 
 407 So.2d 976 (Fla. 4th DCA 1981);
 
 Commodore Plaza at Century 21 Condo. Ass’n, Inc. v. Cohen,
 
 378 So.2d 307 (Fla. 3d DCA 1979).
 

 Affirmed.
 

 [1]
 

 . The Association gave notice of the action to the Attorney General, who declined to participate in the litigation.
 
 See
 
 § 86.091, Fla. Stat. (2007).
 

 [2]
 

 . While the trial court's order refers to section 718.404, it is clear that subsection (2) was the specific provision challenged by the declaratory judgment action.